UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DENARD D. NEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-915 (JR) |
| | ) | |
| HARRELL WATTS, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS

The defendant, by and through their attorney, the United States Attorney for the District of Columbia, hereby moves to dismiss this case for lack of personal jurisdiction and improper venue pursuant to Federal Rule of Civil Procedure 12(b)(2) and (3) and (6). This motion is accompanied by a Memorandum and a proposed Order consistent with LCvR 7(a) and (c).

Date: August 24, 2007

Respectfully submitted,

JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

KENNETH ADEBONOJO
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7157
kenneth.adebonojo@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DENARD D. NEAL,                          )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )       Civil Action No. 07-915 (JR)
                                         )
HARRELL WATTS,                           )
                                         )
            Defendant.                   )
_____ )

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS

Defendants respectfully move to dismiss this case for failure to state a claim, lack of

personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2)

(3) and (6).

## I. BACKGROUND

A. Plaintiff's Background

On January 14, 1991, the United States District Court for the District of Arizona

convicted plaintiff Denard Darnell Neal, Reg. No. 23843-008, of three counts of possession and

use of a firearm while committing a crime and three counts of bank robbery in violation of 18

U.S.C. §§ 924(C) and 2113(A). See SENTRY Public Information Inmate Data. The United

States District Court for the District of Arizona sentenced plaintiff to 55 years and 5 months in

prison on January 14, 1991 and ordered plaintiff to pay $11,178 in restitution. See id. Plaintiff's

sentence commenced on February 14, 1991. See id.

B.    Plaintiff's Allegations

Plaintiff filed this action on May 16, 2007 while he was incarcerated at FCC Coleman in Coleman, Florida.  He alleges that Defendant Harrell Watts has violated his First, Fourth, Fifth and Eighth Amendment rights.

Plaintiff alleges that Defendant Watts has taken disciplinary sanctions against him because he refuses to participate in the Inmates' Financial Responsibility Program (IFRP). Compl. ¶ 1.  Plaintiff states that the IFRP is a voluntary program and that he does not wish to participate in it.  Compl. ¶ 5.  He claims that Defendant Watts is forcing him into a contract with the Bureau of Prisons and extorting money from him by making him participate in the IFRP. Compl. ¶¶ 2, 9.  Plaintiff further alleges that Defendant Watts has retaliated against Plaintiff, imposed disciplinary sanctions against him and/or allowed Bureau of Prisons (BOP) staff to impose disciplinary sanctions against him for refusing to participate in the IFRP.  Compl. ¶ 5. Plaintiff also claims that the BOP does not have the Article III power to collect any alleged debt that is due to the United States.  Compl. ¶ 3.  He states that the BOP has never asserted a claim against him and therefore he cannot owe a legal debt to the BOP.  Id.  Plaintiff alleges that Defendant Watts has violated his Fifth Amendment rights by imposing sanctions on him without due process and by refusing to lift the sanctions against him.  Compl. ¶ 19.  He claims that Defendant Watts has violated his Eighth Amendment rights by extorting and harassing him out of funds and attempting to steal funds from him.  Compl. ¶¶ 20, 21.

Plaintiff also claims that unnamed defendants at FCC Coleman harassed and threatened him in attempting to give him a tuberculosis test.  Compl. ¶¶ 10, 17.  He states that although he voluntarily submitted to a chest x-ray, the medical staff continue to harass him.  Compl. ¶ 15.

Additionally, plaintiff states that "medical staff would use force on Plaintiff to administer a test that is nothing short of dangerous, violate Plaintiff right to be secured in his body, violate Plaintiff Belief as a Hebrew Israelite, give false positive and false negative results." Compl. ¶ 18. Plaintiff alleges that Defendant Watts violated his Fourth Amendment rights by forcing FCC Coleman medical staff to threaten him in giving him an tuberculosis test. Comp. ¶ 23. He alleges that Defendant Watts has violated his First Amendment rights to practice the belief of his choice. Compl. ¶ 24. Additionally, Plaintiff alleges that Defendant Watts violated his Eighth Amendment rights "to be free of dangerous and harmful chemicals injected into the personal property of Plaintiff (his body)." Compl. ¶ 25.

## II. STANDARD OF REVIEW

In resolving a motion to dismiss, pursuant to Rule 12(b)(6), the court must construe the factual allegations in the complaint in the light most favorable to plaintiff, but need not accept the legal conclusions or allegations without factual support in the allegations made. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). The Court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matter of which the court may take judicial notice, and matters of public record. EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). Here, Plaintiff has pled no facts in support of this Bivens claim that would entitle him to relief.

## III. PERSONAL JURISDICTION

A.    The Court Has No Personal Jurisdiction As Required By Rule 12(b)(2)

Plaintiff bears the burden of establishing that personal jurisdiction may be exercised over these named defendants. See Naarlex Consulting Corp. v. Watt, 722 F.2d 779, 785 (D.C. Cir.

1983) cert. denied sub nom Naartex Consulting Corporation v. Clark, 467 U.S. 1210 (1984).

Accordingly, this court will have no jurisdiction in this matter as explained by this Court:

> A plaintiff in district court must plead essential jurisdictional facts
> and must carry throughout the litigation the burden of showing that
> he is properly in court. 'If his allegations of jurisdictional facts are
> challenged by his adversary in any appropriate manner, he must
> support them by competent proof. And where they are not so
> challenged the court may still insist that the jurisdictional facts be
> established or the case be dismissed, and for that purpose the court
> may demand that the party alleging jurisdiction justify his
> allegations by a preponderance of evidence.

Edmond v. U.S. Postal Service, 727 F.Supp. 7, 10 (D.D.C. 1989) (citing McNutt v. General

Motors Acceptance Corp., 298 U.S. 178, 189 (1936) aff'd in part and rev'd in part 949 F.2d 415

(D.C. Cir. 1991)).  There is no *act* and *injury* alleged to have occurred within the District of

Columbia by Defendant Watts.  Any injury to plaintiff necessarily took place outside the District

of Columbia, since he was never housed here and all allegations in this action pertain to his

incarceration in Florida.

Minimum Contacts

Alternatively, jurisdiction requires the requisite minimum contacts, as such, Defendant

Watts should be dismissed pursuant to Rule 12(b)(2).  As will be discussed below, plaintiff

cannot meet the burden to establish such necessary facts.  In order for the District Court for the

District of Columbia to have personal jurisdiction over a defendant, there must be established

minimum contacts and the exercise of jurisdiction must comport with "traditional notions of fair

play and substantial justice." Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102

(1987);  Wiggins v. Equifax Inc., 853 F.Supp. 500 (D.D.C. 1994).  "Plaintiff's claim for relief

must arise from the defendants' contacts with the District of Columbia and his 'claims must bear some relation to the acts in the District that are relied upon to confer personal jurisdiction.' [D.C. Code] § 13-423(b); Bayles v. K-Mart Corp., 636 F.Supp. 852, 854 (D.D.C.1986)." Id. at 502.

Again, the burden is on plaintiff to establish that this Court exercises personal jurisdiction. See Blumenthal v. Drudge, 992 F.Supp. 44, 53 (D.D.C. 1998). Plaintiff in this case has failed to allege such facts, and the allegations against Defendant Watts do not establish "minimum contacts" necessary to confer personal jurisdiction upon the District Court for the District of Columbia. Defendant Watts does not live in the District of Columbia. See Watts Declaration. The mere fact that Defendant Watts is an employee of the BOP, and the Central Office of the agency happens to be in Washington, D.C., is insufficient to establish the requisite "minimum contacts" with the District of Columbia. Cameron v. Thornburgh, 983 F.2d 235, 256 (D.C. Cir. 1993); Zakiya v. U.S., 267 F.Supp.2d 47 (D.D.C. 2003); Reuber v. U.S., et al., 750 F.2d 1039 (D.C. Cir.1984); James v. Reno, et al., 1999 WL 615084 (D.C. Cir. 1999) (Inmate's security classification and transfer request made in Texas; both federal prisons at issue located in Texas; no injury suffered in the District of Columbia; mere fact that defendants are employees of the BOP based in D.C. insufficient to establish requisite "minimum contacts" with District).

## IV.VENUE IS IMPROPER IN THE DISTRICT OF COLUMBIA

In contrast to an official capacity claim against a federal employee, which seeks relief from the United States, an individual-capacity claim against a federal employee seeks recovery from the personal financial assets of the employee. Hafer v. Melo, 502 U.S. 21, 25 (1991).

Venue in this Bivens case is governed by the provisions of 28 U.S.C. §1391(b), which provides in applicable part:

5

> (b)    A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

In Stafford v. Briggs, 444 U.S. 527, 542 (1979), the Supreme Court stated that this provision, rather than the more permissive venue provisions of 28 U.S.C. §1391(e), are applicable in Bivens actions:

> What emerges is that the bill's author, the Committees, and the Congress intended nothing more than to provide nationwide venue for the convenience of individual plaintiffs in actions which are nominally against an individual officer but are in reality against the Government. A suit for money damages which must be paid out of the pocket of the private individual who happens to be--or formerly was-- employed by the Federal Government plainly is not one "essentially against the United States," and thus is not encompassed by the venue provisions of Section 1391(e).

Noting that Congress did not intend to require "those serving their Government the burden of defending personal damages actions in a variety of distant districts. . . ," Id., 444 U.S. at 545, the Court found that these federal officers should be treated like others who are sued for personal damages, and the provisions of 28 U.S.C. §1391(b) should govern.

Plaintiff has provided no evidence that Defendant Watts resides in the District of Columbia, that any of the events giving rise to the claim occurred within the District of Columbia, and plaintiff does not reside in the District, therefore, venue is improper in the District of Columbia pursuant to 28 U.S.C. § 1391(b) and Meyer v. Reno, et al., 911 F. Supp. 11, 15 (D.D.C. 1996). On the contrary, Plaintiff's complaint involves allegations related to actions that took place in Florida, not in the District of Columbia. This case should therefore be dismissed

6

under Rule 12(b)(3), Federal Rules of Civil Procedure.

## V. DEFENDANT WATTS IS ENTITLED TO QUALIFIED IMMUNITY FROM SUIT IN HIS INDIVIDUAL CAPACITY

Individually-named federal Defendants sued for money damages for violations of constitutional rights are immune from suit under the doctrine of qualified immunity if, *inter alia*, the complaint fails to allege facts that give rise to the violation of a clearly-established constitutional right. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (government officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known). See also Mitchell v. Forsyth, 472 U.S. 511, 526(1985) ("[u]nless the plaintiff's allegations state a claim or violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.")

Under the "clearly established" inquiry, a <u>Bivens</u> defendant need not demonstrate that the law was specifically established in his favor at the time he acted (i.e., "that a Supreme Court opinion had specifically approved their actions"), but only that the law was unsettled at the time. Zweibon v. Mitchell, 729 F.2d 162, 173-74 n.19 (D.C. Cir. 1983), cert. denied, 469 U.S. 880 (1984). "[O]nce the trial judge determines the law was not clearly established at the time the contested conduct occurred, the inquiry ceases." Zweibon, 720 F.2d at 168 (citing Harlow v. Fitzgerald, supra.).

A.    <u>Defendant Watts is Entitled to Qualified Immunity because Plaintiff's Constitutional Rights were not Violated Through the IFRP</u>

The IFRP is a program that "encourages each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R. § 545.10. The IFRP provides that each inmate will

work with BOP staff in making a financial responsibility plan to meet his or her legal financial

obligations including restitution, fines and court costs, and other state and federal obligations. 28

C.F.R. § 545.11. An inmate must make payments toward his or her financial obligations

according to his or her financial responsibility plan. 28 C.F.R. § 545.11(b). An inmate's wages

from his or her prison employment is the source of these payments. Id. The amount of these

payments varies for inmates with UNICOR and non-UNICOR assignments.[1] Id. A certain

amount of an inmate's wages is deposited into his or her trust fund account and is excluded from

the inmate's minimum payment schedule "to allow the inmate an opportunity to better maintain

telephone communication under the Inmate Telephone System (ITS)." Id.

     Inmates are not required to participate in the IFRP, however, when an inmate chooses not

to participate in the IFRP, the inmate will lose certain privileges:

> (d) Effects of non-participation. Refusal by an inmate to participate
> in the financial responsibility program or to comply with the
> provisions of his financial plan ordinarily shall result in the
> following:
>> (1) Where applicable, the Parole Commission will be
>> notified of the inmate's failure to participate;
>> (2) The inmate will not receive any furlough (other than
>> possibly an emergency or medical furlough);
>> (3) The inmate will not receive performance pay above the
>> maintenance pay level, or bonus pay, or vacation pay;
>> (4) The inmate will not be assigned to any work detail
>> outside the secure perimeter of the facility;
>> (5) The inmate will not be placed in UNICOR. Any inmate
>> assigned to UNICOR who fails to make adequate progress
>> on his/her financial plan will be removed from UNICOR,
>> and once removed, may not be placed on a UNICOR
>> waiting list for six months. Any exceptions to this require

---

[1] Federal Prison Industries, Inc. ("FPI," also known by the name "UNICOR") is a statutorily-created government corporation whose purpose is to provide work to inmates confined in federal institutions. See 18 U.S.C. § 4121; 28 C.F.R. § 345.10.

approval of the Warden;

(6) The inmate shall be subject to a monthly commissary spending limitation more stringent than the monthly commissary spending limitation set for all inmates. This more stringent commissary spending limitation for IFRP refusees shall be at least $25 per month, excluding purchases of stamps, telephone credits, and, if the inmate is a common fare participant, Kosher/Halal certified shelf-stable entrees to the extent that such purchases are allowable under pertinent Bureau regulations;

(7) The inmate will be quartered in the lowest housing status (dormitory, double bunking, etc.);

(8) The inmate will not be placed in a community-based program;

(9) The inmate will not receive a release gratuity unless approved by the Warden;

(10) [Reserved]

(11) The inmate will not receive an incentive for participation in residential drug treatment programs.

28 C.F.R. § 545.11(d).

Plaintiff is not required to participate in the IFRP. See 28 C.F.R. § 545.10. Plaintiff has not identified any conduct of Defendant Watts or of BOP staff that violated IFRP regulations. To the extent that plaintiff is challenging the BOP's use of the IFRP, "[t]he IFRP has been uniformly upheld against constitutional attack." Id. at 886; see Dorman, 955 F.2d at 58-59; Johnpoll v. Thornburgh, 898 F.2d 849, 851 (2d Cir.), cert. denied 498 U.S. 819, 111 S.Ct. 63 (1990); James, 866 F.2d at 630.

Plaintiff alleges that Defendant Watts has retaliated against Plaintiff by imposing disciplinary sanctions against him for his refusal to participate in the IFRP. Prison officials cannot impose disciplinary sanctions against an inmate in retaliation for the inmate's exercise of a constitutional right. Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993), rehearing and suggestion for rehearing en banc denied (1994). Here, Plaintiff's retaliation claim must fail because

9

inmates do not have a constitutional right to any of the privileges they may lose for refusing to participate in the IFRP. See eg. Karacsonyi v. Radloff, 885 F.Supp. 368, 370 (N.D.N.Y.1995) (furlough is not a right but a privilege); Gilliam v. Quinlan, 608 F.Supp. 823, 834 (S.D.N.Y.1985) (furlough is not a liberty interest); Bulger v. U.S. Bureau of Prisons, 65 F.3d 48, 49-51 (5th Cir. 1995) (prisoner does not have a protected property interest in UNICOR assignment); James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir.1989), cert. denied 493 U.S. 870, 110 S.Ct. 197 (1989) (inmates do not possess a liberty or property interest in prison job assignments); Flittie v. Solem, 827 F.2d 276, 279 (8th Cir.1987) (inmates have no constitutional right to be assigned to a particular job); Prows v. Federal Bureau of Prisons, 981 F.2d 466, 469 (10th Cir. 1992), cert. denied, 510 U.S. 830 (1993) ("Nothing in § 3624(c) indicates any intention to encroach upon the Bureau's authority to decide where the prisoner may be confined during the pre-release period.") citing United States v. Laughlin, 933 F.2d 786, 789 (9th Cir.1991); Fagiolo v. Smith, 326 F.Supp.2d 589, 592-93 (M.D. Pa. 2004) (prisoner is not entitled to placement in a community corrections center under 18 U.S.C. § 3624(c)).

Plaintiff has failed to identify any conduct where he was exercising any constitutional rights. See Muhamad v. Moore, 760 F. Supp 869, 871 (D. Kan.1991) (IFRP requirements do not violate constitutional rights); Dorman v. Thornburgh, 955 F.2 57 (D.C. Cir.1992) (rejecting both the due process and excessive punishment claims of a prisoner who was removed from his work assignment because he refused to participate in the IFRP). Moreover, although a failure to comply with an IFRP payment plan may result in the loss of prison privileges and incentives, such losses do not impose a significant restraint on the prisoner's liberty so as to invoke the due process clause. See Sandin v. Conner, 515 U.S. 472, 484 (1995). Therefore plaintiff has failed

to state a violation of a constitutional right based on his IFRP allegations.

    B.    <u>Defendant Watts is Entitled to Qualified Immunity Because Plaintiff's Constitutional Rights were not Violated Through Required Tuberculosis Testing</u>

    Preventing the spread of tuberculosis in prisons to inmates and staff is a legitimate penological interest. <u>McCormick v. Stadler</u>, 105 F.3d 1059, 1061-62 (5th Cir. 1997); <u>Africa v. Horn</u>, 998 F.Supp. 557, 559-60 (E.D. Pa. 1998); <u>Hasenmeier-McCarthy v. Rose</u>, 986 F.Supp. 464, 467 (S.D. Ohio 1998); <u>Westbrook v. Wilson</u>, 896 F.Supp. 504, 504-05 (D. Md. 1995). Prison officials also have an affirmative duty to protect inmates from infectious disease. <u>Jolly v. Coughlin</u>, 76 F.3d 468 (2d Cir. 1996). Failure to screen inmates for contagious diseases may violate their constitutional rights. <u>See</u> <u>Inmates of Occoquan v. Barry</u>, 650 F. Supp. 619, 629 (D.D.C. 1986); <u>Lareau v. Manson</u>, 651 F.2d 96, 109-11 (2d Cir. 1981); <u>see also</u> <u>Plummer v. United States</u>, 580 F.2d 72, 76-77 (3d Cir. 1978) (inmates have cause of action for emotional distress for exposure to tuberculosis). The BOP has established policy related to the administration of tuberculosis testing in Program Statement 6190.03, <u>Infectious Disease Management</u>; <u>see also</u> 28 C.F.R. §§ 549.10-15.

    In order to prevail on an Eighth Amendment claim for Defendant Watts' alleged failure to provide medical care of his choice (x-ray testing for tuberculosis instead of a PPD skin test), plaintiff must prove that he has a serious medical need and that Defendant Watts acted with deliberate indifference to his serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). Deliberate indifference requires the plaintiff to prove that a prison official: (1) was deliberately indifferent in his response to the prisoner's needs; (2) intentionally denied or delayed access to medical care; or (3) intentionally interfered with the treatment prescribed. <u>Id.</u> at 105. In order to

prove deliberate indifference, a plaintiff must "allege that officials had subjective knowledge of the serious medical need and recklessly disregarded the excessive risk to inmate health or safety from that risk." Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003) citing Farmer v. Brennan, 511 U.S. 825, 837 (1994). A prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw that inference." Farmer, 511 U.S. at 837.

The BOP administers a tuberculin skin test screening with the PPD test to screen for both the latent form of tuberculosis and of tuberculosis in its disease form. Although plaintiff believes this form of tuberculosis testing is dangerous, may produce false positive or negative results, and he has submitted to alternate testing in the form of an x-ray, the BOP's compelling interest in preventing the spread of disease in prisons and protecting the health and safety of staff and inmates outweighs plaintiff's concerns. See id. at 1061-62; Africa, 998 F.Supp. at 559-60; Hasenmeier-McCarthy, 986 F.Supp. at 467; Westbrook, 896 F.Supp. at 504-05. Plaintiff states that he voluntarily submitted to a chest x-ray to test him for tuberculosis instead of a PPD skin test. X-ray testing is an alternative to a skin test for tuberculosis. The court in Karolis v. New Jersey Department of Corrections described these types of medical tests, noting that an x-ray will only show active tuberculosis, while a PPD test will also show latent tuberculosis. Karolis v. New Jersey Department of Corrections, 935 F.Supp. 523, 529 (D.N.J.); see also Hasenmeier-McCarthy, 986 F.Supp. 468 ("[O]ther alternatives, such as the taking of chest x-rays, are insufficient to detect latent tuberculosis."). A PPD test will show those individuals who have

12

been exposed to tuberculosis. <u>Karolis</u>, 935 F.Supp. at 529. The court in <u>Karolis</u> ruled that "[c]hest x-rays alone are insufficient to serve New Jersey's compelling interest in detecting TB among its inmates at the earliest possible moment." <u>Id.</u>

Disagreement between an inmate and his doctor as to appropriate choice of medical treatment, however, does not give rise to constitutional violation because the right under the Eighth Amendment "to be free from cruel and unusual punishment does not include the right to treatment of one's choice." <u>Dias v. Vose</u>, 865 F.Supp. 53, 57 (D. Mass. 1994) (<u>quoting</u> <u>Layne v. Vinzant</u>, 657 F. 2d 468, 473 (1st Cir. 1981)); <u>see also</u> <u>Jolly v. Klein</u>, 923 F.Supp. 931, 944-45 (S.D. Tex. 1996) ("[A] claim that additional diagnostic techniques or forms of treatment should have been utilized is inadequate for purposes of § 1983."). Additionally, a difference of opinion between an inmate and his doctor concerning medical treatment does not constitute deliberate indifference. <u>Sonds v. St. Barnabas Hosp. Correctional Health Services</u>, 151 F.Supp.2d 303, 311 (S.D.N.Y. 2001) (citations omitted). An inmate does not have an absolute right to the medical treatment of his choice. <u>Dean v. Coughlin</u>, 804 F.2d 207, 215 (2d Cir. 1986).

An inmate does have a liberty interest in refusing unwanted medical treatment under the Fourteenth Amendment, however, there are times when the government's interest in maintaining the safety and security of a prison outweighs the interest of the inmate. <u>Washington v. Harper</u>, 494 U.S. 210, 223 (1990); <u>see also</u> <u>Cruzan v. Director, Missouri Dept. of Health</u>, 497 U.S. 261, 279 (1990) (determining whether an individual's right have been violated "must be determined by balancing his liberty interests against the relevant state interests"). Moreover, an individual's right to refuse medical treatment is not absolute. <u>Cruzan</u>, 497 U.S. at 279. In <u>Harper</u>, the Supreme Court held that the state of Washington could treat a mentally ill prisoner against his

13

will by forcing him to take antipsychotic drugs if the inmate was dangerous to himself or others.

Harper, 494 U.S. at 227. The Fifth Circuit has ruled that a prison could force an inmate who had

tested positive for tuberculosis to be medicated as part of the treatment for his condition.

McCormick, 105 F.3d at 1060-61.

Plaintiff has failed to plead sufficient facts that would allow him to prevail on an Eighth

Amendment claim. Although plaintiff may have submitted to a chest x-ray for tuberculosis

testing, plaintiff does not have the right to the medical treatment of his choice. See Dean, 804

F.2d at 215. Plaintiff's claim concerning his desired medical treatment does not constitute

deliberate indifference and therefore does not rise to the level of an Eighth Amendment violation.

See Sonds, 151 F.Supp.2d at 311; Dias, 865 F.Supp. at 57.

C.    Defendant Watts is Entitled to Qualified Immunity Because Plaintiff's
      Constitutional Rights to Free Exercise Under the First Amendment Have not Been
      Violated

A prison regulation or policy that may unconstitutionally infringe on an inmate's First

Amendment rights is valid if the regulation is "reasonably related to legitimate penological

interests." Turner v. Safley, 482 U.S. 78, 89 (1987). In Turner, the Supreme Court established a

test for determining whether a prison regulation burdens an inmate's practice of his religion. To

determine whether a prison regulation is valid, the Supreme Court considered four factors: (1)

whether there is a rational connection between the regulation and the legitimate government

interest; (2) whether there is an alternate means for an inmate to exercise his rights; (3) the

impact of the accommodation of the inmate's right on prison staff, other inmates, and the

administration of accommodating the inmate's right; and (4) the existence of alternatives to the

prison regulation that can be accomplished at minimal cost to legitimate penological interests.

14

See id. at 89-91. Prison officials do not need to demonstrate that the contested regulation is the least restrictive means of achieving their legitimate penological goals nor must they demonstrate a compelling government interest to justify the regulation. See id. The Supreme Court later held in O'Lone v. Estate of Shabazz that the reasonableness test is a less restrictive standard than the standard that ordinarily applies to alleged infringements on an inmate's constitutional rights. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987).

Courts have upheld the penological interest of administering skin PPD testing to maintain the health and safety of inmates and staff over an inmate's claim that the testing violated his free exercise of religion under the First Amendment. In Ballard v. Woodward, an inmate argued that prison officials violated his First Amendment right to practice his religion when he was forcibly tested for tuberculosis by injection while he was fasting in observance of Ramadan. Ballard v. Woodward, 641 F.Supp. 432, 436 (W.D.N.C. 1986). The court ruled that the state's penological and institutional interests in maintaining the health of its prison population outweighed the inmate's First Amendment rights and that the restriction on the inmate's practice of his religion was constitutional. Id. at 437. In Africa, the court held that the penological interest in administering PPD skin testing outweighed the inmate's claim that his religion prevented puncturing of the skin. 998 F.Supp. at 559.

In Karolis, an inmate sought an order pursuant to the Religious Freedom Restoration Act (RFRA) that he did not have to submit to a PPD test because it violated tenets of his Christian Science faith. Karolis, 935 F.Supp. at 524. Under RFRA, a government may substantially burden a person's exercise of religion if it demonstrates that application of the burden to the person is: (1) in furtherance of a compelling governmental interest; and (2) is the least restrictive

15

means of furthering that compelling governmental interest. 42 U.S.C. § 2000bb-1(b). The court in Karolis found that the state's interest in responding to the threat of disease and diagnosing and treating inmates was a compelling interest and that a PPD test was the least restrictive means of furthering that interest. 935 F.Supp. at 527-30. The court found that the state satisfied the heightened standard of review under RFRA, and therefore the state also satisfied the less stringent reasonableness test for free exercise claims under the First Amendment brought outside of RFRA. Id. at 530.

The BOP's tuberculosis testing policy is reasonably related to the legitimate penological interest of preventing the spread of disease and maintaining the health and safety of inmates and staff. See Turner, 482 U.S. at 89. Moreover, the BOP's interest satisfies the heightened standard of review of demonstrating a compelling interest under RFRA. See Karolis, 935 F.Supp. at 527-30. Plaintiff also has another means for religious expression, as plaintiff maintains the right to participate in religious ceremonies and is not deprived of all forms of religious exercise. See Shabazz, 482 U.S. at 352; see also Boreland v. Vaughn, 1993 WL 62707 at *4 (E.D. Pa.) (noting that a blood test was a one-time procedure that was not an ongoing restriction of the inmate's ability to practice his faith). Accommodating plaintiff's religious beliefs would have a negative impact on him, other inmates and BOP staff in potentially exposing them to tuberculosis. See Harper, 494 U.S. at 225 ("Prison administrators have not only an interest in ensuring the safety of prison staffs and personnel, but also the duty to take reasonable measures for the prisoners' own safety."). Moreover, failing to test plaintiff for latent tuberculosis and potentially exposing other inmates and BOP staff to tuberculosis would conflict with the BOP's duty to provide medical care to inmates, protect inmates from infectious disease, and screen inmates from contagious

16

disease. See Estelle, 429 U.S. 97; Jolly, 76 F.3d at 468; Inmates of Occoquan, 650 F. Supp. at

629; Lareau, 651 F.2d at 109-11; Plummer, 580 F.2d at 76-77. The BOP does not have any

reasonable alternatives to its tuberculin skin testing policy. PPD skin testing is the method the

BOP uses to detect both latent and active tuberculosis; x-ray testing is insufficient to detect latent

tuberculosis and therefore does not serve the BOP's interest of eliminating the threat of

tuberculosis in an institution. The BOP's compelling penological interest in conducting

tuberculosis testing to ensure the safety of staff and inmates outweighs plaintiff's interests to be

free from bodily intrusion. See Rhinehart, 1995 WL 364339 at *3

## VI.    PLAINTIFF FAILS TO ALLEGE PERSONAL INVOLVEMENT OF THE NAMED DEFENDANTS

Even if this Court finds Plaintiff has sufficiently pled a constitutional action, this case

must still be dismissed because Plaintiff fails to allege personal involvement on the part of any of

the named defendants in the allegedly unconstitutional conduct. The District of Columbia

Circuit has repeatedly held that a Plaintiff in an action for damages against a federal official in

his or her individual capacity must allege that the defendant federal official was personally

involved in the illegal conduct. Simpkins v. District of Columbia Government, 108 F.3d 366,

369 (D.C. Cir. 1997); see also Risely v. Hawk, 108 F.3d 1396 (D.C. Cir. 1997) (absent

allegations concerning personal involvement, claims against federal officials are based on

respondeat superior, and are not cognizable in Bivens action); Cameron, 983 F.2d at 258 (same).

Defendant Watts does not have any involvement with the IFRP (at the institution level).

Defendant Watts is the National Inmate Appeals Administrator and reviews administrative

remedies that inmates appeal to the Central Office in Washington, D.C. He does not oversee the

17

IFRP nor does he impose sanctions on inmates.

Defendant Watts is the National Inmate Appeals Administrator and works in Washington, D.C. He had no involvement in the allegations made by the plaintiff. Id. He has no oversight authority over USP Coleman, the IFRP, nor the BOP's policy for tuberculosis testing. Id. Thus, Defendant Watts did not violate the constitutional rights of the plaintiff.

## VII.    MERE THREATS ARE NOT A VIOLATION OF THE EIGHTH AMENDMENT

It is well established that verbal abuse or harassment will not, without some reinforcing act accompanying them, be a violation of the Eighth Amendment. MacLean v. Secor, 876 F.Supp. 695, 698 (E.D. Pa. 1995). A constitutional claim based only on verbal threats will fail if it is asserted under the Eighth Amendment's ban on cruel and unusual punishment. Id., at 699; McBride v. Deer, 240 F.3d 1287, 1291 (10th Cir. 2001) (taunts and threats are not an Eighth Amendment violation); Barney v. Pulsipher, 143 F.3d 1299, 1310 n.11 (10th Cir. 1998) ("acts of verbal harassment alone are not sufficient to state a claim under the Eighth Amendment."); Hopson v. Fredericksen, 961 F.2d 1374, 1378 (8th Cir. 1992), Burton v. Livingston, 791 F.2d 97, 99 (8th Cir.1986) ("mere words, without more, do not invade a federally protected right"), Rivera v. Goord, 119 F.Supp.2d 327, 342 (S.D.N.Y. 2000) (verbal harassment does not violate inmate's constitutional rights).

Plaintiff make no specific allegations regarding Defendant Watts and threats to force him to take a tuberculosis test. As such plaintiff's complaint does not establish a violation of such constitutional rights clearly established under law.

## V. CONCLUSION

For reasons stated herein, this action should be dismissed with prejudice.

Date: August 24, 2007                     Respectfully submitted,

JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

KENNETH ADEBONOJO
Assistant United States Attorney
555 4ᵗʰ Street, N.W.
Washington, D.C. 20530
(202) 514-7157
kenneth.adebonojo@usdoj.gov

19

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DENARD D. NEAL,                          )
                                         )
              Plaintiff,                  )
                                         )
              v.                          )        Civil Action No. 07-915 (JR)
                                         )
HARRELL WATTS,                           )
                                         )
              Defendant.                  )
                                         )

ORDER

UPON CONSIDERATION of the Defendant's Motion To Dismiss Plaintiff's Complaint,

support thereof, the grounds stated therefore and the entire record in this matter, it is by the Court

this _____ day of _____, 2005, hereby

ORDERED that the said motion be and hereby is granted, and

FURTHER ORDERED that this case is dismissed with prejudice.

This is a final and appealable order.

_____
HON. JAMES ROBERTSON, U.S.D.J.

Copies to:

Kenneth Adebonojo
Assistant United States Attorney
555 4th Street, N.W
Washington, D.C. 20530

Denard Darnell Neal
Reg. No. 23843-008
USP Atwater
U.S. Penitentiary
P.O. Box 019001
Atwater, CA 95301